**G. HEILEMAN BREWING COMPANY, INC., Plaintiff,**

v.

**JOSEPH OAT CORPORATION, Defendant.**

No. 83–C–765–C.

United States District Court, W.D. Wisconsin.

Aug. 9, 1985.

Richard Florsheim, Foley & Lardner, Milwaukee, Wis., for plaintiff.

John F. Hellegers and John Fitzpatrick, Dilworth, Paxson, Kalish, and Kauffman, Philadelphia, Pa., and John Possi, Bell, Metzner & Gierhart, Madison, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

On June 17, 1985, the United States Magistrate filed an order imposing sanctions upon Joseph Oat Corporation and its insurer, National Union Fire Insurance Company of Pittsburgh, for their failure to comply with the magistrate's oral order of December 14, 1984, which was reduced to writing and entered on December 18, 1984.

Joseph Oat and National Union Fire Insurance Co. have filed "objections" to the magistrate's order imposing sanctions and have requested that oral argument be held on their objections. I assume that in fact they are seeking reconsideration of the magistrate's order pursuant to 28 U.S.C. § 636(b)(1)(A), which provides that "a judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law."

In support of what I construe as their motion for reconsideration, Joseph Oat and National Union argue that the magistrate had no authority to require the presence of representatives of these two companies at the settlement conference held on December 19, 1984, and thus, no authority to impose sanctions upon them for their failure to appear. They contend that Rule 16 does not authorize the court to require parties to be present for a settlement conference, and they cite *J.F. Edwards Construction Co. v. Anderson Safeway*, 542 F.2d 1318 (7th Cir.1976), for the proposition that district courts do not have authority to impose sanctions against a party that refuses to agree to a signed stipulation of facts. Also, they point out that the lawyer for Joseph Oat Corporation did appear at the settlement conference, although they concede that he had no authority to take any action with regard to settlement, except to refuse any settlement offer that did not provide for dismissal of all claims against Joseph Oat Corporation with prejudice and without payment of any money by Joseph Oat to any other party.

*J.F. Edwards* is not controlling in the case. As the magistrate pointed out in his order, there is a significant distinction between being required to agree to a settlement or stipulation and merely being required to attend and confer. There is no indication in the record of the proceedings before the magistrate or any assertion by Joseph Oat or National Union Fire Insurance that the magistrate's order contemplated requiring Joseph Oat or National Union Fire to agree to any particular form of settlement or even to agree to settlement at all. The only requirement imposed

by the magistrate was that representatives of these companies be present with full authority to settle, should terms for settlement be proposed that were acceptable to these corporations.

■ I do not accept the proposition that Rule 16 does not authorize a court to require the presence of parties with full authority to settle a case. Although it is possible that there would be circumstances in which such a requirement would be so onerous, so clearly unproductive, or so expensive in relation to the size, value, and complexity of a case that it might be an abuse of discretion for a court to impose it, there should be no question about the court's authority to do so in appropriate situations. The clear intention of the recent amendments to the Federal Rules is to provide courts with the tools that are required to manage their caseloads effectively and efficiently. One of those basic tools is the authority to conduct productive settlement conferences. A settlement conference without all of the necessary parties present is not productive. Neither is a conference of persons who have no authority to settle.

By bringing their dispute to a court for resolution, the parties have invoked the use of an expensive public resource. It is a misuse of those resources for any party to refuse even to meet personally with the opposing party or its counsel to attempt to resolve their disputes prior to trial.

It is no argument that it would have been futile for Joseph Oat or National Union Fire to appear by representatives with full authority to settle, simply because these corporations had decided that they would not settle on any terms other than full dismissal of the claims against Joseph Oat. It is always possible that exposure of the decisionmakers to the realities of a case will bring about a re-evaluation of settlement posture on the part of those persons. Thus it is appropriate for a judicial officer to require that, particularly in complex and

protracted litigation, the decisionmakers be made aware of all aspects of the case and the anticipated costs of its prosecution and defense by being personally present before the court.

■ In any event, it is too late for Joseph Oat and National Union Fire to argue the propriety of the magistrate's order. They had advance notice of the order and could have sought vacation or modification of the order by a district judge. Having failed to take that step, and having chosen instead simply to ignore the order, they are in no position to argue the merits of the order at this time.

In short, I am not persuaded that the magistrate's order was clearly erroneous or contrary to law. Therefore, I decline to reconsider the order.

## APPENDIX

This action arises out of a dispute over the construction of a waste water treatment plant for G. Heileman Brewing Company, Inc. (Heileman) by RME Associates, Inc. (RME) and Joseph Oat Corporation (Oat). The plant incorporated a pretreatment system owned and licensed by N.V. Centrale Suiker Maatschappij, a Netherlands Corporation (CSM).

On December 20, 1982, Oat sued Heileman and RME in the United States District Court For the District of New Jersey and RME counterclaimed. That suit was subsequently transferred to this district and RME joined CSM as a third-party defendant. On the same day, Heileman instituted an action in the Circuit Court of Waukesha County against Oat and RME. RME crossclaimed against Oat, counterclaimed against Heileman, and later joined CSM. Early in the litigation Heileman and Oat agreed to, and did, withdraw all claims between them. Oat later dismissed its complaint against RME in the instant proceeding.[1]

1. After the events giving rise to this motion Heileman, RME, and CSM resolved their differences. Heileman was granted leave to intervene in this case and to be substituted for RME in RME's claims against Oat. RME and CSM ceased to be parties to any of the proceddings.

The litigation among these parties has been hotly contested at every turn and there has been extensive discovery in the United States and abroad. Presently before the undersigned is an order to show cause why Oat and/or its liability carrier, National Union Fire Insurance Company of Pittsburgh (National), and/or Oat's counsel, John Possi, should not have sanctions imposed upon them pursuant to Rule 16(f), Federal Rules of Civil Procedure, or be held to answer for contempt of court, for failure to obey an order requiring Oat and National to be represented at a settlement conference, in addition to counsel, by a representative of their respective companies having full authority to settle the case.

### FINDINGS OF FACT

On November 7, 1984, RME filed a motion to postpone the trial, then set to commence January 14, 1985. At the hearing on that motion on November 9, 1984, it was represented that RME, CSM, and Heileman had begun the exploration of a settlement of this and the Waukesha County action and that the trial date should be put over to permit the parties to devote themselves to these efforts. An order was then and there entered on the record continuing the trial. Further, to facilitate the settlement efforts, a settlement conference was ordered to be held before the undersigned on December 14, 1984. The order directed that each party (excepting CSM) attend, in addition to counsel, by a representative having full authority to settle the case. The oral order (hereafter, the November Order) was reduced to written form under date of November 19, 1984. It stated, in pertinent part:

"5. A settlement conference, which shall include the Heileman Brewing Company, shall be held herein on *December 14, 1984 at 2:00 p.m.* All participants are invited, but not required, to submit, ex parte, settlement memoranda, on or before December 3, 1984, not to exceed 3 pages in length. The settlement memoranda shall contain:

"(a) The party's statement of the remaining issues in the case,

"(b) The terms upon which the party would propose to compromise the case, and

"(c) The party's reasons in support of its proposed settlement terms. *In addition to counsel, each party shall be represented at the conference by a representative having full authority to settle the case, excepting only CSM, whose authorized representative in the Netherlands shall be available by telephone throughout the duration of the conference.* CSM's New York counsel may, but is not required to, attend. This settlement conference will be postponed until further order of the court in the event that a settlement conference attended by all interested parties is previously conducted before the judge to whom the companion state court action is assigned in the Circuit Court of Waukesha County." (Emphasis added)

The other parties complied with the November order. RME appeared by its counsel, Joseph Schmitt and Thomas Harrington. The principals of RME, Mr. Richards and Mr. Meisel, were also present, as was Mr. Weaver from Chicago on behalf of RME's liability carrier, General Accident Company. CSM appeared by Thomas Piper and Ralph Bushnell, who reported that a representative of CSM having authority to settle was standing by by telephone in the Netherlands. In addition, Richard Papper, CSM's New York counsel, was present. Though not subject to the jurisdiction of the court, Heileman was present by its attorney, Richard Florsheim, and by Mr. Smith, its General Counsel.

Such was not the case with Oat. John Possi, of the firm of Bell, Metzner & Gierhart, appeared as counsel for Oat, having

---

For all practical purposes the Waukesha County action and the District Court action have been reduced in scope and consolidated into a single action. By stipulation, the caption has been amended to reflect the true relationship of the parties. The subject of this opinion is the sole remaining matter in litigation in which RME and CSM are interested.

been retained to defend Oat by Oat's liability carrier, National. No representative from Oat was present. National was represented at the conference by Joseph McMahon of American International Adjustment Company, an independent adjuster. Mr. McMahon had no authority to settle the case and took the position that National was not interested in making any payment. Mr. Possi had been granted no settlement authority by Oat or National.

The December 14 conference lasted several hours and offered some prospect of progress in spite of the inability of Oat and National's representatives to participate. At the conclusion of the conference all parties, counsel and participants assembled in the courtroom and an oral order was entered continuing the conference to December 19, 1984, and again directing that each party (excepting CSM) (including specifically the insurance carriers of Oat and RME) be represented at the continued conference by persons having full authority to settle the case. This oral order (hereafter, the December order) was reduced to writing and entered on December 18, 1984. That order stated, in pertinent part:

> "The progress of the conference was impaired by the fact that neither plaintiff Joseph Oat Corporation, or its carrier National Union, was represented in addition to counsel, by a representative having full authority to settle the case as specifically directed by Paragraph 5(c) of the court Order of November 19, 1984 ..."
>
> "It appearing that a substantial possibility exists that a number of the claims and issues in these cases may be susceptible of settlement, and that other related matters might be considered (including the avoidance of unnecessary proof, cumulative evidence and redundant litigation; the possibility of adopting amendments to the pleadings, the restructuring of the parties; and the adoption of special procedures for managing this complex and protracted litigation) so as to secure the just and speedy determination of this litigation at the least expense to the parties,
>
> "IT IS HEREBY ORDERED:

> "2. *In addition to counsel, each party and the insurance carriers of plaintiff Oat and defendant RME, shall be represented at the conference in person by a representative having full authority to settle the case or to make decisions and grant authority to counsel with respect to all matters that may be reasonably anticipated to come before the conference;* provided, however, that third-party defendant CSM, a Netherlands corporation, may appear in person by its counsel only, provided an authorized representative of CSM having the authority aforesaid, shall be available by telephone in the Netherlands throughout the duration of the conference." (Emphasis added)

On December 19 the conference resumed. Mr. Possi again appeared for Joseph Oat. He disclaimed representation of National but stated that Mr. McMahon had informed him it was National's position that National was not subject to an order requiring them to attend, as National was not a party to the lawsuit. Mr. Possi had no settlement authorization from Oat or National. John M. Fitzpatrick, a Philadelphia lawyer who is described as "personal counsel" (but not of record in these proceedings) also appeared for Oat. While Mr. Fitzpatrick claimed authority to speak for Oat, he stated that his authority was to make no offer. Thus, no representative of Oat or National having authority to settle the case was present at the conference as the order directed.

Both Oat and National had full knowledge and understanding of both the November and December orders. Neither Oat nor National sought a reconsideration of either order by a judge of the District Court as provided by 28 U.S.C. Section 636(b)(1)(A) and Rule 72, Federal Rules of Civil Procedure. Nor did Oat or National seek or obtain an order for the modification, clarification or withdrawal of either of the orders or to excuse or extend the time for performance thereof.

There is nothing in the record to support the conclusion that John Possi instigated, promoted, or encouraged Oat or National in their disobedience of the orders. Neither does the record reflect that he adjured or admonished either Oat or National to obey the orders or to seek a review or reconsideration thereof.

## CONCLUSIONS OF LAW

The facts are beyond dispute. Having previously disobeyed the November order directing their appearance at a settlement conference, Oat and National deliberately failed and refused to obey an even more explicit order to send to the settlement conference of December 19, in addition to counsel, company representatives having full authority to settle the case. This failure could, of course, have been excused if counsel had been given unrestricted settlement authority. However, counsel was given no authority at all.

Even in the face of a show of cause order, Oat and National maintain their silence and rely upon the argumentive and largely incompetent affidavits of counsel. No official of Oat or National has submitted a single line from which justification or excuse could be inferred. Crediting Mr. Fitzpatrick's claim of authority to speak for Oat, his rambling apologia does nothing more than confuse the issues. Neither the fact that Oat (or National) did not want to settle, nor the soundness of their reasons for their positions, are relevant to the question of their obligation to comply with the order to attend. Accordingly, it is unnecessary to consider, for example, the alleged uncertainty about Oat's insurance coverage.[2] Oat is the party to this action and Oat must answer for any judgments against it. Whether Oat is entitled to indemnity is a matter of its contract with National. However, that contract is not in issue here and they will not be heard to justify their disobedience of orders by reference to conveniently obscure uncertainties about their relationship. Indeed, it is problems such as this that Rule 16, Federal Rules of Civil Procedure, seeks to uncover and resolve so that the litigation may move forward smoothly to trial or compromise.

Respondents rely upon *J.F. Edwards Construction Co. v. Anderson Safeway, etc.*, 542 F.2d 1318 (7th Cir.1976) in support of their contention that sanctions should not be imposed. That case, which antedates by several years the expansion of Rule 16, does not support respondents' position. In *Edwards* the sanction of dismissal was imposed upon a party because its attorney would not sign a stipulation of facts. The *Edwards* court's condemnation of coercive practices has no application to the instant case. Respondents ignore the distinction, made in *Edwards*, between being required to attend and confer on the one hand and being compelled to agree to a settlement on the other. Contrary to respondents' suggestion, these settlement conferences were not attempts to bludgeon unwilling litigants into submission, but rather a response to the request of the majority of the litigants who earnestly sought compromise.

Since the amendments of August, 1983, Rule 16 has specifically provided that the facilitation of settlement is an appropriate pretrial function. See Rule 16(a)(5) and (c)(7). This view is reinforced by the Notes of the Advisory Committee. The instant case was a perfect candidate for supervised settlement efforts. It involved extremely complicated and technical issues which were then being litigated among different parties in two different jurisdictions at great expense to the parties themselves and two judicial systems. Three of the four parties to the dispute were engaged in settlement efforts, sought additional time to pursue those discussions, and sought the assistance of the undersigned to that end. For reasons known only to themselves, Oat and National did not want to settle the case and apparently did not want the others to

---

2. Mr. Fitzpatrick appears to rely upon both the existence and the denial of coverage as justification for Oat's failure to attend the conferences. There is, however, no mention of any denial of coverage in Mr. Possi's affidavit or in the briefs submitted by respondents.

settle. Accordingly, they simply refused to attend or participate.[3]

The authority to convene a settlement conference under Rule 16 is a hollow authority indeed if the power is lacking to require the presence at the conference of the parties themselves. Only in that way may proposals and counter-proposals be advanced and responded to without delay. The presence of the parties, who are, of course, the most familiar with their claims and the nature of their businesses, also opens opportunities to explore the existence of other common grounds for agreement which may involve matters outside the litigation. It is common knowledge that the majority of lawsuits do settle and our literature is filled with articles detailing the variety of negotiating and settlement techniques which courts, with increasing frequency, are being encouraged to employ.

National, however, seeks to justify its failure to attend the December 19 conference on the ground that it had no obligation to attend since it is not a party to the lawsuit. It does not appear that the question of the authority of a court to compel the attendance of the liability carrier of a party has been considered by this circuit. The question was considered by the Sixth Circuit in a case where the trial court found the claims manager of the liability carrier in contempt for his refusal to appear and participate in a court-ordered settlement conference. While the conviction was reversed because of certain defects in the underlying order, the principal of the court's authority to compel the carrier's attendance and participation was clearly established. *In re LaMarre*, 494 F.2d 753 (6th Cir.1974). The court stated on page 756:

> "Appellant also disputes the authority of the District Judge to compel La-

Marre's appearance. Although the 'order' involved appears to us to present a question of first impression, we believe it was well within the judicial power. Pretrial proceedings, whether for preparation for trial or for settlement conferences, are an integral and vital part of the judicial process. Rules of court guide and control pretrial. Fed.R.Civ.P. 16; (citation omitted). We perceive no grounds for denying the trial judge the power to require attendance of any party to the case at any session of the court where the judge deems his presence to be necessary. We believe the District Judge was correct in holding that LaMarre was a party to the proceeding before the court. The Insurance Company of North America was by contract required to defend and to pay the damages, if any, assessed within its policy limits in the District Court suit.... While Michigan law (citation omitted) prohibits the naming of any insurance company as a party defendant, the reality of the matter is that INA had retained counsel, was prepared to defend the suit, and was in complete control of settlement negotiations. Further, it is undisputed that Charles LaMarre was the resident agent of INA in charge of the case.

> "In short, we have no doubt that the District Judge had the right and the power to issue an order to Mr. LaMarre to attend a pretrial session of the court and, on refusal, to enforce said order by contempt proceedings. Mr. LaMarre's expressed determination not to accept the recommendation of his own counsel and settle the underlying case could have been reiterated in the conference. It is, of course, clear that on due process grounds, no judge can compel a settlement prior to trial on terms which one or both parties find completely unac-

---

**3.** Respondents urge that the ultimate settlement among Heileman, RME and CSM proves that no one was prejudiced by their boycott of the negotiations. This contention is frivolous. The other parties and the judicial system were denied the opportunity to achieve reconciliation among all the parties short of trial. Furthermore, the process of resolution among the settling parties was undoubtedly prolonged by Oat and National's refusal to involve themselves. Finally, no showing of prejudice is required for the imposition of sanctions for the disobedience of a lawful order.

ceptable. But LaMarre could not, in our judgment, refuse a lawful order to attend such a conference to discuss the matter."

The rationale of *LaMarre* is persuasive. While not technically a party to the proceeding, the presence of the liability carrier is pervasive. National hired Mr. Possi and his firm to defend Oat. National conducts the defense. National pays Mr. Possi and is kept informed of the progress of the litigation. Under the conventional liability policy the insured has a duty to "cooperate" with the insurance company and the insured is not at liberty to compromise the insured claim without the approval of the insurance company. The settlement of a claim by the insurance company may be complicated by the amount of coverage or the presence of uninsured claims or the affirmative claims of the insured.

In all events, the insurance carrier exercises a significant influence on the course of the litigation and on the question of whether it can or will be settled. Beyond that, it is granted the privilege under the laws of the various states to contract with members of the public to provide them a defense in court if they are sued. To the extent that the carrier, in fulfillment of that obligation, enjoys or exercises the rights and powers of the insured, it stands in the shoes of the insured and owes to the court in which the action is pending the same obligation that the insured owes as the party to the litigation. Whether National was or was not named as a party is not relevant to the issue. Its obligations are the same in either case.

Since, by contract, Oat has ceded to National at least some of its independent power to compromise the case, National must also accept Oat's duty to appear and participate in court-ordered efforts to promote settlement. As previously noted, this does not mean that the court has the power to compel National to settle or to make an offer; National must, however, appear and participate as required by Rule 16.

For the foregoing reasons, the undersigned concludes that Oat and National each knowingly violated the pretrial order of December 18, 1984, which was lawfully issued pursuant to Rule 16, Federal Rules of Civil Procedure.

There is no warrant for the imposition of sanctions on John Possi as it appears that he fulfilled the minimum requirements of informing Oat and National of the orders and did not procure their disobedience of them.

While there is little doubt that the conduct of Oat and National could be certified to the District Court pursuant to 28 U.S.C. Sec. 636(e) for adjudication of contempt, that measure does not appear to be necessary in this case. Rule 16(f) permits a full range of sanctions to be imposed upon a party who fails to obey a pretrial order, or fails to appear, or fails to participate in good faith. Subparagraph (f) further provides:

"In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing him or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the compliance was substantially justified or that other circumstances made an award of expenses unjust."

This provision suggests the appropriate sanction in this case—to require Oat and National to pay to all of the participants in the conference of December 19, 1984, including G. Heileman Brewing Company, their full expenses and costs of attendance and participation in the conference, including attorneys fees. Such costs and expenses, when determined, shall be the joint and several obligation of Oat and National.

### ORDER
IT IS HEREBY ORDERED:

1. That Joseph Oat Corporation and National Union Fire Insurance Company of Pittsburgh shall pay to RME Associates, Inc., N.V. Centrale Suiker Maatschappij, the General Accident Company, and G. Heileman Brewing Company the expenses

and costs, including attorneys fees, incurred by them in connection with their attendance at the settlement conference held herein on December 19, 1984;

2. That the said payees shall, within 21 days from the date of this order, file and serve their sworn, detailed schedules of such expenses and costs; and

3. That Joseph Oat Corporation and National Union Fire Insurance Company of Pittsburgh shall have 14 days thereafter in which to file materials in opposition to the claims so submitted.

4. That the amount to be paid hereunder by Joseph Oat Corporation and National Union Fire Insurance Company of Pittsburgh shall be the subject of a separate order.

Entered this 17th day of June, 1985.

/s/ James Groh
JAMES GROH
United States Magistrate

### GENERAL ORDER

A party seeking reconsideration of a ruling of a United States Magistrate by a judge of the court, pursuant to 28 U.S.C. Sec. 636(b)(1)(A), shall file a Motion for Reconsideration with the clerk of court within ten (10) days after the ruling, if made in open court, or within ten (10) days after being served with a copy of a written order. Such motion shall enumerate the specific matters of which reconsideration is sought, and shall be accompanied by a supporting brief. The brief in opposition shall be filed within ten (10) days thereafter, and the reply brief, if any, within five (5) days.

A Magistrate may, as a part of the order, provide for a greater or lesser period in which to file the Motion for Reconsideration and may alter the briefing schedule accordingly.

Entered this 18th day of January, 1985.

BY THE COURT:

/s/ Barbara B. Crabb
BARBARA B. CRABB
District Judge